## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

D.M. HOPKINS,                                          )
                                                       )
                          Plaintiff,                   )
                                                       )
v.                                                     ) Case No.
                                                       )
CITY OF INDEPENDENCE, MISSOURI,                        ) REQUEST FOR JURY TRIAL
SERVE:                                                 )
C/O Fisher Patterson Sayler & Smith, LLP               )
David S. Baker, Esq.                                   )
9393 West 110th Street, Suite 300                      )
Building 51, Corporate Woods                           )
Overland Park, KS 66210                                )
                                                       )
                                                       )
and                                                    )
                                                       )
CHIEF OF POLICE BRAD HALSEY, *in his individual*       )
*and official capacity,*                               )
SERVE:                                                 )
C/O Fisher Patterson Sayler & Smith, LLP               )
David S. Baker, Esq.                                   )
9393 West 110th Street, Suite 300                      )
Building 51, Corporate Woods                           )
Overland Park, KS 66210                                )
                                                       )
and                                                    )
                                                       )
JOSH CANTERBURY, *in his individual and official*      )
*capacity,*                                            )
SERVE:                                                 )
C/O Fisher Patterson Sayler & Smith, LLP               )
David S. Baker, Esq.                                   )
9393 West 110th Street, Suite 300                      )
Building 51, Corporate Woods                           )
Overland Park, KS 66210                                )
                                                       )
and                                                    )
                                                       )
CARTER McVAY,*in his individual and official capacity,* )
SERVE:                                                 )
C/O Fisher Patterson Sayler & Smith, LLP               )

David S. Baker, Esq.                                    )
9393 West 110th Street, Suite 300                      )
Building 51, Corporate Woods                           )
Overland Park, KS 66210                                )
                                                       )
and                                                    )
                                                       )
SLADE SHAFER, *in his individual*                      )
*and official capacity,*                               )
SERVE:                                                 )
C/O Fisher Patterson Sayler & Smith, LLP               )
David S. Baker, Esq.                                    )
9393 West 110th Street, Suite 300                      )
Building 51, Corporate Woods                           )
Overland Park, KS 66210                                )
                        Defendants.                    )

## COMPLAINT

COMES NOW Plaintiff D.M. Hopkins ("Plaintiff"), by and through her undersigned attorneys, and for her Complaint against Defendants City of Independence, Missouri, Chief of Police Brad Halsey, Josh Canterbury, Carter McVay, and Slade Shafer (hereinafter collectively "Defendants"), alleges and states as follows:

## Parties and Jurisdiction

1.      Plaintiff is a citizen of the United States, and, at all times pertinent to this Complaint was a "qualified individual with a disability" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA").

2.      Defendant City of Independence, Missouri (hereinafter "Defendant City") is, and at all times pertinent to this Complaint was, a subdivision of the state of Missouri, organized and existing under the laws of Missouri.

3.     Defendant City is responsible for the supervision, management, and control of the Independence Police Department (hereinafter "IPD"), through which Defendant City fulfills its policing functions.

4.     Upon information and belief, Defendant Chief of Police Brad Halsey (hereinafter "Defendant Halsey") is, and since August 3, 2016 has been, the Chief of Police of the Independence Police Department.

5.     Upon information and belief, Defendant Josh Canterbury, Defendant Carter McVay, and Defendant Slade Shafer (hereinafter, collectively, the "Uniformed Defendants"), are, and at all times pertinent to this Complaint were, uniformed officers employed by Defendant City as part of the IPD.

6.     Upon information and belief, at all relevant times, the Uniformed Defendants acted under the supervision and management of Defendant Halsey.

7.     Upon information and belief, Defendant Canterbury is and was at all times material hereto a citizen of the United States and the state of Missouri.

8.     Upon information and belief, Defendant Canterbury was at all times material hereto employed by Defendants City as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

9.     Upon information and belief, Defendant McVay is and was at all times material hereto a citizen of the United States and the state of Missouri.

10.    Upon information and belief, Defendant McVay was at all times material hereto employed by Defendants City and Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

11.     Upon information and belief, Defendant Shafer is and was at all times material hereto a citizen of the United States and the state of Missouri.

12.     Upon information and belief, Defendant Shafer was at all times material hereto employed by Defendants City and Department as a duly appointed and sworn police officer, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

13.     This is an action for the violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 and rights as a disabled person under the ADA.

14.     All of the unlawful acts and practices set forth below were committed within Jackson County, Missouri. Jurisdiction and venue are proper in the United States District Court Western District of Missouri pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

**<u>General Allegations Common to All Counts</u>**

15.     Plaintiff is an African American female.

16.     At all times pertinent, Plaintiff suffered from numerous mental conditions, including bipolar disorder.

17.     On June 7, 2019, Plaintiff was sitting in her parked car behind a store in Independence, Jackson County, Missouri.

18.     Plaintiff called the 9-1-1 dispatch to be connected to a non-emergency, suicide prevention hotline.

19.     Plaintiff stated that she did not need a police unit sent, she just needed to speak to someone about her emotional state.

20.     Upon information and belief, two separate police vehicles were dispatched to Plaintiff's location; having been notified no offense had been or was being committed by Plaintiff.

21.     After the two police vehicles arrived at Plaintiff's location, more than one of the Uniformed Defendants approached Plaintiff's vehicle.

22.     Plaintiff asked to be left alone and explained she did not need assistance.

23.     Plaintiff informed the Uniformed Defendants that they were making her uncomfortable by surrounding her vehicle.

24.     One of the Uniformed Defendants told Plaintiff the Uniformed Defendants would get her out of the car if she did not do so voluntarily.

25.     One of the Uniformed Defendants opened Plaintiff's car door without Plaintiff's permission.

26.     Around this time, an emergency medical technician ("EMT") arrived in an ambulance.

27.     The EMT approached Plaintiff's vehicle and informed Plaintiff that the police would leave if Plaintiff got out of the car with the EMT.

28.     With the Uniformed Defendants no longer surrounding her vehicle in a menacing fashion, Plaintiff picked up personal belongings (including a cigar and her phone) and exited her car to walk with the EMT.

29.     Plaintiff walked with the EMT to the ambulance and answered questions she was asked.

30.     Plaintiff then took a few steps to the side of ambulance to smoke her cigar.

31.     Without provocation, the Uniformed Defendants approached Plaintiff aggressively and began putting their hands on her.

32.     Plaintiff put her hands up to the sides of her head to show she was not resisting or threatening the officers.

33.     One of the Uniformed Defendants slammed Plaintiff against the side of a vehicle and used his arm to hold her in place.

34.     The Uniformed Defendant's hand/arm was at Plaintiff's throat as Plaintiff was held against the ambulance with her feet off the ground.

35.     Plaintiff's personal belongings were taken by the Uniformed Defendants.

36.     Plaintiff informed the Uniformed Defendants that they had chipped her tooth.

37.     Plaintiff was thrown to the ground by the Uniformed Defendants.

38.     Plaintiff was placed onto her stomach and her hands were forced behind her back.

39.     Plaintiff was handcuffed.

40.     Despite Plaintiff being handcuffed, Plaintiff was restrained in a prone position.

41.     One of the Uniformed Defendants kicked Plaintiff in the face before digging his knee into her neck/back.

42.     Another Uniformed Defendant twisted Plaintiff's legs up.

43.     Plaintiff told the Uniformed Defendants that she could not breathe.

44.     In response, Plaintiff heard laughter.

45.     Plaintiff was not immediately removed from the position she was being held in.

46.     A Uniformed Defendant had his foot on Plaintiff's head/back and stomped down.

47.     Plaintiff felt her back start to pop.

48.     Plaintiff began to feel dizzy and lose consciousness.

49.     Plaintiff then felt a needle in her arm and shortly thereafter lost consciousness.

50.     Plaintiff continued to drift in and out of consciousness.

51.     Plaintiff fully awoke at Centerpoint Hospital, where she was held until she was moved to Research Hospital.

52.     Plaintiff was hospitalized for seven (7) days.

53.     Plaintiff suffered numerous abrasions and bruises, as well as a chipped tooth.

54.     Plaintiff also suffered emotional injury.

55.     Throughout the incident described above, Plaintiff did not exhibit behavior which would constitute a threat to the police.

56.     Throughout the situation, the Uniformed Officers failed to carry out an appropriate response.

57.     Plaintiff did not exhibit behavior that a police officer could perceive as being a threat to themselves or others.

58.     The Uniformed Defendants did not have probable cause to place Plaintiff under arrest.

59.     Plaintiff was met with excessive force and sustained injuries as a result of the actions of the Uniformed Defendants.

60.     Throughout the situation, Plaintiff was not free to leave.

61.     The Fourth Amendment prohibits the use of deadly force in non-deadly circumstances which do not pose an immediate threat of serious bodily injury and/or death.

62.     It has long been known by the law enforcement community that the use of neck restraints on subjects can lead to death.

63.     Upon information and belief, Defendant City's officers regularly used neck restraints on passively resisting or non-resisting arrestees.

64.     Upon information and belief, Defendant City knows of such use of neck restraints and either expressly on implicitly approves of such use.

65.     It is well known throughout the law enforcement and medical communities that holding a subject in a position of prone restraint for prolonged periods of time can be deadly.

66.     Upon information and belief, Defendant City's officers regularly hold passively resisting or non-resisting arrestees in a prone restraint for prolonged periods of time.

67.     Upon information and belief, Defendant City knows of such prolonged use of prone restraint and either expressly on implicitly approves of such use.

68.     Compressing an arrestee in a prone position with weight on their back and/or abdomen restricts their ability to breathe and can result in asphyxiation.

69.     Upon information and belief, Defendant City's officers regularly compress arrestees in a prone position with weight on their back and/or abdomen.

70.     Upon information and belief, Defendant City knows that its officers regularly compress arrestees in a prone position with weight on their back and/or abdomen and either expressly on implicitly approves of such use.

## COUNT I – UNLAWFUL SEIZURE, 42 U.S.C. § 1983

71.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

72.     The Uniformed Defendants "seized" Plaintiff by demanding she exit her vehicle.

73.      The Uniformed Defendants "seized" Plaintiff by grabbing her and slamming her against the side of the ambulance.

74.     The Uniformed Defendants "seized" Plaintiff by slamming and pinning her to the ground.

75.     Upon information and belief, the Uniformed Defendants "seized" Plaintiff by directing the EMT to administer Plaintiff an injection.

76. The Uniformed Defendants did not have a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime.

77. Any interest the Uniformed Defendants may have had in carrying out the above-described acts to fulfill their "community caretaking function" was far outweighed by Plaintiff's interest in being subjected to the government intrusion imposed upon her by those seizures.

78. The ultimate scope of the encounter by the Uniformed Defendants with Plaintiff vastly exceeded any community caretaking purpose it may have had.

79. The detention by the Uniformed Defendants of Plaintiff in the above-described acts was objectively unreasonable and violated clearly established law.

80. During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

81. Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used.

82. In fact, the Uniformed Defendants intentionally turn off their recording devices when discussing the use of force directly after it occurred.

83. The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' use of constitutionally unreasonable force against Plaintiff.

84. In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

85. These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

9

86. As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

87. Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

88. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

89. The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT II – FALSE ARREST, 42 U.S.C. § 1983

90. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

91. The Uniformed Defendants grabbed Plaintiff and slammed her against the side of the ambulance.

92. The Uniformed Defendants slammed Plaintiff to the ground and pinned her to the ground.

93. Upon information and belief, the Uniformed Defendants directed the EMT to administer Plaintiff an injection.

94. Upon information and belief, Uniformed Defendants ordered Plaintiff held in custody at Centerpoint Hospital.

95. The above-described conduct constituted an arrest of Plaintiff.

96. The Uniformed Defendants did not have a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime.

97. Any interest the Uniformed Defendants may have had in carrying out the above-described acts to fulfill their "community caretaking function" was far outweighed by Plaintiff's interest in being subjected to the government intrusion imposed upon her by those seizures.

98. The ultimate scope of the encounter by the Uniformed Defendants with Plaintiff vastly exceeded any community caretaking purpose it may have had.

99. The detention by the Uniformed Defendants of Plaintiff in the above-described acts was objectively unreasonable and violated clearly established law.

100. The Uniformed Defendants unlawfully placed Plaintiff under arrest.

101. The Uniformed Defendants did not have probable cause to arrest Plaintiff.

102. The Uniformed Defendants had no legitimate interest in arresting Plaintiff in order to carry out their "community caretaking function," but even if they did (or believed they did) any such purported interest was far outweighed by Plaintiff's interest in not being subjected to the government intrusion imposed upon her by those seizures.

103. During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

104.    Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used.

105.    In fact, the Uniformed Defendants intentionally turn off their recording devices when discussing the use of force directly after it occurred.

106.    The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' use of constitutionally unreasonable force against Plaintiff.

107.    In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

108.    These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

109.    As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

110.    Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

111.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

112.    The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and

costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT III – EXCESSIVE USE OF FORCE, 42 U.S.C. § 1983

113.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

114.    The Uniformed Defendants "seized" Plaintiff by demanding she exit her vehicle.

115.    The Uniformed Defendants "seized" Plaintiff by grabbing her and slamming her against the side of the ambulance.

116.    The Uniformed Defendants "seized" Plaintiff by slamming and pinning her to the ground.

117.    The Uniformed Defendants' used of deadly force in applying direct pressure to and kneeling on Plaintiff's neck and back.

118.    Upon information and belief, the Uniformed Defendants "seized" Plaintiff by directing the EMT to administer Plaintiff an injection.

119.    Upon information and belief, Uniformed Defendants ordered Plaintiff held in custody at Centerpoint Hospital.

120.    The above-described conduct constituted an arrest of Plaintiff.

121.    Any interest the Uniformed Defendants may have had in carrying out the above-described acts to fulfill their "community caretaking function" was far outweighed by Plaintiff's interest in being subjected to the government intrusion imposed upon her by those seizures.

122.    The ultimate scope of the encounter by the Uniformed Defendants with Plaintiff vastly exceeded any community caretaking purpose it may have had.

123.    The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they took the above-stated actions against Plaintiff.

124.    The use of force in the above-described acts was objectively unreasonable and violated clearly established law.

125.    The Uniformed Defendants did not need to use force, and especially did not need to use deadly force, to check on Plaintiff's wellbeing or otherwise fulfill their community caretaking function.

126.    The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they slammed Plaintiff into the vehicle and held her off of the ground and restrained her arms.

127.    The Uniformed Defendants did not need to slam Plaintiff into the vehicle and hold her off of the ground and restrain her arms in order to check on her wellbeing or otherwise fulfill their community caretaking function.

128.    The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they threw Plaintiff to the ground.

129.    The Uniformed Defendants did not need to throw Plaintiff to the ground in order to check on her wellbeing or otherwise fulfill their community caretaking function.

130.    The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they kicked Plaintiff while she was pinned to the ground.

131.    The Uniformed Defendants did not need to kick Plaintiff while she was pinned to the ground in order to check on her wellbeing or otherwise fulfill their community caretaking function.

132.    The Uniformed Defendants did not have a reasonable fear of imminent bodily harm while then pinned Plaintiff to the ground by kneeling on her neck/back, and continued to do so (and even increased the pressure) when Plaintiff told them she could not breathe.

133.    The Uniformed Defendants did not need to pin Plaintiff to the ground by kneeling on her neck/back, and they did not need to continue to do so (and even increase the pressure) when Plaintiff told them she could not breath, in order to check on her wellbeing or otherwise fulfill their community caretaking function.

134.    In all the above actions, the use of force was excessive because it was not reasonably necessary to arrest the Plaintiff or take the Plaintiff into custody or stop the Plaintiff for investigation or to check on her wellbeing or otherwise fulfill their community caretaking function.

135.    Every reasonable officer would have known that using force against a handcuffed individual who is not resisting arrest constitutes excessive force in violation of the Fourth Amendment.

136.    The Uniformed Defendants' use of deadly force in applying direct pressure to and kneeling on Plaintiff's neck and back, was objectively unreasonable and violated clearly established law.

137.    During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

138.    Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used.

139.    In fact, the Uniformed Defendants intentionally turn off their recording devices when discussing the use of force directly after it occurred.

140.    The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' use of constitutionally unreasonable force against Plaintiff.

141.    In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

142.    These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

143.    As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

144.    Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

145.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

146.    The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT IV – SUPERVISORY AND MUNICIPAL LIABILITY, 42 U.S.C. § 1983 (MONELL)

147.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

148.    The Uniformed Defendants, acting under the supervision of Defendant Halsey and Defendant City, violated Plaintiff's constitutional rights as specified in the above-stated paragraphs.

149.    The Mayor of Defendant City, the City Council of Defendant City, and Defendant Halsey had final policymaking authority with regard to establishing written policies and training programs governing the conduct of IPD officers performing policing functions on behalf of Defendant City. The Mayor of Defendant City, the City Council of Defendant City, and Defendant Halsey established and/or approved of IPD's written policies and training governing the conduct of IPD officers performing policing functions.

150.    Upon information and belief, there is a pattern of unconstitutional acts by Defendant City's IPD employees using excessive force.

151.    Upon information and belief, this pattern includes use of excessive force by Defendant City's officers against those with mental health issues.

152.    For example, upon information and belief, on or about September 14, 2014, an IPD officer used excessive force against victim Bryce Masters, using a Taser on the then-seventeen-year-old after Masters did not exit his vehicle as quickly as the IPD officer wanted.

153.    Additionally, for example, upon information and belief, on or about January 7, 2017, IPD officers used excessive force against victim Carlos Cruz, when IPD officers were called only to assist Mr. Cruz, who was threatening suicide, resulting in his death.

154.    Defendant City and Defendant Halsey, at all times pertinent to this Complaint, were aware of this pattern.

155.    Upon information and belief, Defendant City and Defendant Halsey, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the unconstitutional patterns and practices and were deliberately indifferent to and/or tacitly authorized the same.

156.    Defendant City and Defendant Halsey's training practices were inadequate to prevent a continuation of this pattern.

157.    Defendant City and Defendant Halsey's supervision of the officers (including the Uniformed Defendants) was inadequate to prevent a continuation of this pattern.

158.    Defendant City and Defendant Halsey, at all times pertinent to this Complaint, were deliberately indifferent in failing to adequately train and/or supervise the Uniformed Defendants and others, such that the failure to train and/or supervise reflects a deliberate and conscious choice.

159.    Upon information and belief, Defendant City had an unofficial policy and/or practice for its officers to use excessive force against individuals who were not sufficiently compliant with, or sufficiently deferential to, its officers.

160.    Upon information and belief, Defendant City had an unofficial policy and/or practice for its officers to use excessive force against individuals with mental health conditions.

161.    Upon information and belief, Defendant Halsey supported and ratified these unofficial policies.

162.    On or prior to June 7, 2019, Defendant City and Defendant Halsey , with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety

of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

163.     On or prior to June 7, 2019, Defendant City and Defendant Halsey, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by IPD officers.

164.     Upon information and belief, on or prior to June 7, 2019, Defendant City and Defendant Halsey, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that violated those individual's rights, which shall be further identified in discovery.

165.     Upon information and belief, on or prior to June 7, 2019, Defendant City and Defendant Halsey, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified improper and harmful training to officers.

166.     The unconstitutional policies, practices, and customs defined herein were the moving force behind Plaintiff's injuries and the depravation of her rights.

167.     Plaintiff was injured and her rights violated as a direct and proximate result of the acts and omissions by Defendant City and Defendant Halsey.

168.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

169.     Punitive damages are available against Defendant Halsey and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

170.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

171.    In each instance, Defendant City and Defendant Halsey acted under color of state law.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages against Defendant Halsey in his individual capacity, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT V – SUPERVISORY AND MUNICIPAL LIABILITY, 42 U.S.C. § 1983 (CANTON)

172.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

173.    Defendant City failed to properly train or modify its training of the Uniformed Defendants and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during arrests, intervention in the excessive use of force by fellow officers, in interacting with mentally distressed persons, and in interacting with individuals in the role of community caretakers.

174.    Effectuating an arrest, using force to effectuate an arrest, intervening in the use of force, and interacting with mentally distressed persons are usual and recurring situations with which Defendant City's law enforcement officers and other agents encounter on a regular basis.

175.    As such, Defendant City was aware of a need for more and different training.

176.     Defendant City was also aware of the need for training due to prior constitutional violations, including but not limited to the incident involving Masters and the incident involving Cruz.

177.     Defendant City was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

178.     As such, Defendant City was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

179.     The failure to train and/or to appropriately modify training constituted official policies, practices, or customs of Defendant City.

180.     Defendant City's failure to train and/or to modify training was behind the acts and omissions the Uniformed Defendants made toward Plaintiff.

181.     As a direct and proximate result of Defendant City's acts and omissions, Plaintiff suffered injuries, experienced pain and suffering, and was deprived of her constitutional rights.

182.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered actual, emotional, compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

183.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

184.     In each instance, Defendant City acted under color of state law.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant City for economic damages including, but not limited to: actual, emotional, and compensatory damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-

judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT VI – VIOLATIONS OF TITLE II OF THE ADA, 42 U.S.C. § 12131, *et seq.*
### (Against Defendant City)

185. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

186. Plaintiff is disabled, as defined by the ADA, at all relevant times herein and/or Defendant City regarded Plaintiff as being disabled.

187. Specifically, Plaintiff suffers from a mental impairment, bipolar disorder and other mental disorders, which substantially affects her major life activities including: sleeping, caring for one's self, concentrating, thinking, working, and communicating.

188. Defendant City, by and through its officials, knew that Plaintiff suffered from a mental condition.

189. Defendant City regarded Plaintiff as disabled.

190. Plaintiff has a record of a disability.

191. Plaintiff was a qualified individual with a disability as defined by the ADA.

192. Defendant City, by and through its officials, discriminated against Plaintiff due to her disability in numerous ways, including but not limited to:

      a        unlawfully and unjustifiably arresting Plaintiff;

      b        approving and engaging in an exceedingly aggressive, excessive and unreasonable use of force against Plaintiff;

      c        subjecting Plaintiff to scrutiny and unfair treatment due to her disability;

> d     failing to make appropriate efforts to determine whether Plaintiff's conduct or behavior was the result of a disability;
>
> e     failing to modify policies, practices, and/or procedures that result in the arrest and/or abuse of individuals with disabilities; and
>
> f     failing to train officers in the appropriate and reasonable police practices under the circumstances and/or failing to follow such training in this instance.

193.    Such discrimination violates Title VII of the ADA.

194.    Defendant City, by and through its officials and employees, wrongfully arrested Plaintiff because of her legal conduct, attempting to contact a suicide hotline.

195.    Plaintiff did not pose a direct threat to the health or safety of others.

196.    Plaintiff did not pose a threat to the law enforcement officers.

197.    Violently and forcefully seizing and arresting Plaintiff was not necessary to check on Plaintiff's wellbeing or otherwise fulfill Defendant's community caretaking function.

198.    At the time they violently seized and arrested Plaintiff, the Uniformed Defendants were not presented with exigent or unexpected circumstances.

199.    As a direct and proximate result of these violations of the ADA, Plaintiff's right to be free from discrimination on the basis of her disability was denied and she was wrongfully arrested.

200.    As a direct and proximate result of these violations of the ADA, Plaintiff has suffered actual harm, and emotional harm.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages including, but not limited to: actual, emotional, and

compensatory damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Missouri, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

**EDELMAN, LIESEN & MYERS, L.L.P.**

By: _/s/ Katherine E. Myers_
Katherine E. Myers, MO#64896
Alexander L. Edelman, MO#64830
208 W. Linwood Blvd.
Kansas City, Missouri 64111
Telephone: (816) 533-4976
Facsimile:  (816) 463-8449
kmyers@elmlawkc.com
aedelman@elmlawkc.com

**ATTORNEYS FOR PLAINTIFF**